UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CARLOS ENRIQUE MEJIAS TELLEZ,

Petitioner,

v. Case No.: 2:26-cv-2269-SPC-KRH

WARDEN, GLADES COUNTY DETENTION CENTER *et al.*.

Respondents,
_______________________________________/

**OPINION AND ORDER**

Before the Court are Carlos Enrique Mejias Tellez's Petition for Writ of Habeas Corpus (Doc. 1) and the federal government's response (Doc. 3).

Mejias Tellez is a native and citizen of Cuba who entered the United States on August 8, 2022. Border Patrol arrested and briefly detained him, commenced removal proceedings by issuing a notice to appear ("NTA"), and released him on his own recognizance. Mejias Tellez applied for asylum and withholding of removal on September 3, 2022, and he later received work authorization, a social security number, and a driver's license. Since entering the country, Mejias Tellez has maintained steady employment, paid taxes, and complied with all immigration requirements. He has no criminal record.

On October 8, 2025, Mejias Tellez appeared at an immigration court in Miami for a hearing. The Department of Homeland Security ("DHS") moved

to dismiss the proceedings, and the immigration judge granted the request over Mejias Tellez's objection. Immigration and Customs Enforcement ("ICE") arrested Mejias Tellez when he left the courtroom, served him with a notice and order of expedited removal, and detained him. Mejias Tellez expressed fear of returning to Cuba, and an immigration officer ultimately found that fear credible. DHS issued a new notice to appear on November 16, 2025. On April 1, 2026, an immigration judge denied Mejias Tellez's applications for asylum, withholding of removal, and adjustment of status and ordered him removed to Ecuador. Mejias Tellez appealed, so the removal order is not administratively final.

Mejias Tellez claims his detention violates the Fifth Amendment. In response, the government argues he is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii) because he was transferred from expedited removal proceedings to full removal proceedings.

The Immigration and Nationality Act ("INA") establishes two procedures for removing noncitizens from the country. The first process—sometimes called a section 240 proceeding—begins when DHS issues the noncitizen a NTA. It involves an evidentiary hearing before an immigration judge, and it provides the noncitizen an opportunity to apply for asylum. Noncitizens seeking asylum are entitled to due process under the Fifth Amendment. DHS may release the noncitizen into the country on parole while the process plays

out, but only if the noncitizen demonstrates "that the release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceedings." 8 C.F.R. § 1236.1(c)(8).

Expedited removal is the second process. It allows immigration officers to remove noncitizens "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). Because expedited removal affords substantially fewer protections to the noncitizen's rights, the INA limits its applicability in two ways. First, noncitizens may be eligible for expedited removal "only if they are inadmissible on the basis that they either lack proper entry documents or falsified or misrepresented their application for admission." *Coalition for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 61, 2025 WL 2192986, at *5 (D.D.C. 2025) (citing 8 U.S.C. §§ 1225(b)(1)(A)(i) and 1182(a)(6)(C), (a)(7)). "Among that set, only two categories of noncitizens are eligible for expedited removal: (1) noncitizens 'arriving in the United States,' and (2) noncitizens who 'ha[ve] not been admitted or paroled into the United States' and cannot affirmatively show that they have been 'physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)–(iii)).

On January 23, 2025, Acting DHS Secretary Benjamine Huffman issued a memorandum instructing immigration officials to consider the expedited removal of "any alien DHS is aware of who is amenable to expedited removal

but to whom expedited removal has not been applied[.]" Benjamine C. Huffman, Acting DHS Secretary, *Guidance Regarding How to Exercise Enforcement Discretion* (Jan. 23, 2025). The next day, DHS published a notice expanding the application of expedited removal. Office of the Secretary, DHS, *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139.

In its implementation of the new policy, "the Government began targeting for expedited removal people already in section 240 removal proceedings, many of whom are pursuing asylum and other collateral relief." *Make the Road New York v. Noem*, 805 F. Supp. 3d 139, 152-53, 2025 WL 2494908, at *5 (D.D.C. 2025). The D.C. District Court described a common pattern:

> [W]ith DHS first moving orally (without any advance notice) to dismiss the individual's pending section 240 proceedings, then arresting the individual at the courthouse immediately upon the dismissal of their section 240 proceedings, and then, finally, placing the individual in expedited removal proceedings through which they can be deported far more quickly, and with far less process, than they would have been in section 240 proceedings.

*Id.*

The Fifth Amendment guarantees that "[n]o person shall be…deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). It is thus "well

established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The Supreme Court has long recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1976). Courts looks to three factors when considering what process is due in a given situation: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh heavily in Mejias Tellez's favor. First, his interest in freedom from detention "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Second, the risk of erroneous deprivation of that interest is substantial here. When DHS detained Mejias Tellez in 2022, an officer considered his circumstances, found he did "not appear to be a threat to national security, or public safety," and released him on recognizance while he pursued his asylum claim. (Doc. 3-1 at 3). Since then, Mejias Tellez has obtained steady, lawful work, paid income taxes, and

kept his criminal record clean, and he proved he is no flight risk by attending his immigration hearing.

ICE issued the order of expedited removal on October 8, 2025, the day of the courthouse arrest, without any new or additional information suggesting Mejias Tellez is a threat to public safety or a flight risk. What is more, ICE clearly exceeded its statutory authority when it designated him for expedited removal after dismissing his section 240 removal case. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (excluding aliens who have lived in the United States for more than two years after being paroled into the country from the class eligible for expedited removal). The procedure ICE used did not give Mejias Tellez an opportunity to challenge the legal basis for his detention or its necessity. While the government ultimately terminated the expedited removal proceedings and re-commenced section 240 proceedings, it is still using the expedited removal order as justification to detain Mejias Tellez without consideration of his circumstance.

What is more, the Court recognizes significant value in additional safeguards, like the ones DHS has attempted to circumvent by dismissing his removal proceeding. Those safeguards ensure immigration detention serves its statutory purposes and is used in accordance with the laws enacted by Congress.

Third, the government has not established any legitimate interest in Mejias Tellez's continued detention. Immigration detention has two statutory goals: to ensure the noncitizen's appearance at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690. Mejias Tellez's detention serves neither purpose. The immigration official who considered his circumstances in 2022 determined that he should be released, and he has since remained out of trouble, applied for asylum, and participated in his removal proceedings.

The Court finds that ICE violated Mejias Tellez's right to due process by revoking his release, designating him for expedited removal, and detaining him without reasonable notice and a meaningful opportunity to be heard. *See Make the Road New York v. Noem*, 805 F. Supp. 3d 139, 160, 2025 WL 2494908, at *17 (D.D.C. 2025) ("In short, the expedited removal process hardly affords individuals any opportunity, let alone a 'meaningful' one, to demonstrate that they have been present in the United States for two years."); *see also United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) ("the complete denial of the opportunity to be heard on a material issue is a violation of due process which is never harmless error" (cleaned up)).

For the reasons stated above, the Court finds Mejias Tellez's detention violates his right to due process under the Fifth Amendment.

Accordingly, it is hereby

**ORDERED**:

1. The respondents shall release Mejias Tellez from custody within 24 hours of this Order and give him telephone access so he can arrange transportation from the detention facility.

2. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on August 13, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record